EASTERN DIST.
*May,* 1839.

HERNANDEZ
ET AL.
*vs.*
BABCOCK ET AL.

---

HERNANDEZ ET AL. *vs.* BABCOCK'S EXECUTORS.

APPEAL FROM THE COURT OF PROBATES, FOR THE PARISH AND CITY OF NEW-ORLEANS.

Where a merchant ordered a shipment of articles in Havana, to his house in New-York, and was privy to selecting and making up the invoices, he cannot afterwards object to the quantity of any of the articles composing them.

So, if the shipper furnished false invoices to the consignee, for part of the cargo, with the privity of the buyer, when the true ones were sent with the bills of lading, it cannot affect the validity of the contract between the shipper and buyer.

But where a contract grows out of, and is connected with an illegal or immoral act, or is in part only connected with the illegal consideration, and growing immediately out of it, though it be a new contract, it is equally tainted, and a court of justice will not lend its aid to enforce it. 11 *Wheaton,* 258.

A merchant ordered a shipment of colonial articles of produce from Havana, to his house in New-York, and to draw on it for reimbursement. The shipper consigned the cargo to a special agent, with directions not to deliver it to the consignees, unless the bills were accepted and their payment secured, but to sell it on *his* (i. e. the shipper's) *account;* and the cargo was thus *sold at a loss* : *Held,* that the buyer was bound for the *loss and charges;* as his house neither accepted the bills, or offered any security for their payment, when notified of the arrival of the goods.

EASTERN DIST.
*May*, 1839.

HERNANDEZ
ET AL.
*vs.*
BABCOCK ET AL.

This is an action instituted in the Court of Probates against the executors of the estate of the late Henry Babcock, to recover the balance of an account amounting to one thousand six hundred and seventy dollars, on an adventure of goods, ordered by Babcock while in Havana, in 1834, to a mercantile house, in which he was concerned, in New-York.

The plaintiffs furnished and shipped the goods, in obedience to the following letter:

" Havana, 6th February, 1834.

" Gentlemen—Desirous of making an experiment of the New-York market, for some articles of the produce of your island, I agree to the terms of doing business for me, which you have proposed, say two and a half per cent. for purchasing, and one and a half per cent. for drawing; and now authorize you to take up a vessel for me, and load her for New-York, with three to three hundred and fifty hogsheads molasses, one hundred and fifty boxes of sugar, forty or fifty thousand segars, and a few boxes of sweetmeats, consigning the same to my friends, Messrs. Roman Watson & Co., of New-York, and giving them timely advice for insurance. For your reimbursement for the cost of said cargo, you will please draw at sixty days sight on said gentlemen, to which effect, I have this day given you a letter of credit for them.

"Very respectfully, &c.,

" HENRY BABCOCK."

In compliance with this letter and order, the plaintiffs made up a cargo and shipped it per the brig Francis, to the address of Messrs. Roman Watson & Co., New-York, and filled up the bills of lading and invoices, to order, and enclosed them to W. W. Russell, Esq., with directions. "not to hand them over, unless Watson & Co. were willing to accept their drafts, and he *considered them perfectly good to pay said drafts at maturity; and if not, to dispose of the cargo for our* (their) *account,* on the best terms you can, and as your good judgment may dictate."

When the vessel and cargo reached New-York, in the spring of 1834, the house of R. Watson & Co., was laboring under the pressure of the times, and had suspended payment.

On being notified of the arrival of the cargo, they made no proposition to receive the goods, and refused acceptance and payment of the drafts. The articles were sold by Russell, the agent, as instructed, and the net proceeds deducted, leaves a balance still due on the shipment, of one thousand six hundred and seventy dollars, 'for which judgment is prayed.

EASTERN DIST.
*May*, 1839.
HERNANDEZ
ET AL.
*vs.*
BABCOCK ET AL.

The executors resisted payment. It was proved that Babcock was, at the time he ordered the goods, a member of the New-York house.

The plaintiffs had judgment for the sum of one thousand three hundred and fifty-nine dollars, *with interest*, and the defendants appealed.

*L. Peirce*, for the plaintiffs, insisted on the affirmance of the judgment below, with *interest*. The plaintiffs were the mandatories of Babcock, and made advances and took up bills on his account. The *Louisiana Code, article* 2994, expressly says, " If the attorney in fact (or mandatory) has advanced any sum of money, for the affairs of the principal, the latter owes the *interest of it*, from the day on which the advance is proved to have been made."

*T. Slidell*, for the defendants, contended that the conduct of Hernandez & Co., in changing the destination and consignment of the cargo, placing it in the hands of Russell, and ordering him to sell it at his own discretion, for their account, was a stoppage in transitu, and rescinded the whole contract; that in the said proceedings, Hernandez & Co. could not be considered acting as Babcock's agent, but adversely to him, and in the character of vendors.

2. That even if the plaintiffs could be considered as stopping the goods and changing their destination for Babcock's benefit, and as his agent, they should have instructed Russell to wait Babcock's orders, and not, as they did, to sell the same for plaintiff's account.

3. The plaintiffs have exceeded defendants written order, which was to ship from forty to fifty thousand segars, whereas they shipped ninety thousand.

EASTERN DIST.
*May,* 1839.

HERNANDEZ
ET AL.
*vs.*
BABCOCK ET AL.

4. It is not shown that the amount charged in the invoices was the price actually paid by plaintiffs, in purchasing for Babcock's account; at the most, it would seem that the value of the goods merely is shown.

5. It appears that Hernandez & Co. made up the invoices below value, (or sham invoices,) to defraud the revenue of the United States. It does not appear whether Babcock was party to the fraud; but in either case, a contract tainted with such circumstances, cannot form the subject of a claim before a court in the United States.

6. The decision of the judge of Probates is erroneous, in allowing interest on an unsettled account.

7. It has been expressly decided, that judgment cannot be given for *interest,* on an unliquidated demand; not even to run from the date of judgment. See two cases in 4 *Louisiana Reports,* 129, 140.

*Eustis, J.,* delivered the opinion of the court.

In Havana, on the 6th of February, 1834, the deceased, Henry Babcock, gave an order to the plaintiffs, merchants in that place, to make a shipment of certain articles of colonial produce, to Roman Watson & Co., of New-York, and to draw on that firm for their reimbursement.

The shipment was made, but the plaintiffs, from the state of things in New-York, entertaining some doubts as to the solvency of the consignees, had the bills of lading made out to the order of the shippers, and sent them to Mr. Russell, a merchant of New-York, with instructions not to deliver them to the consignees, unless they would accept the drafts which had been drawn on the shipment, and unless 'he, Russell, " should consider the house perfectly good, to pay said drafts at maturity."

Roman Watson & Co., had previously failed, and Russell having communicated to them his instructions, and notified his intention to abide by them, no security was offered to him, except the guarantee of the house of Roman Watson & Co. Russell sold the shipment and paid the bills which had been protested for non-payment and non-acceptance.

EASTERN DIST.
*May*, 1839.

HERNANDEZ
ET AL.
*vs.*
BABCOCK ET AL.

Where a merchant ordered a shipment of articles in Havana, to his house in New-York, and was privy to selecting and making up the invoices, he cannot afterwards object to the quantity of any of the articles composing them So, if the shipper furnished false invoices to the consignee, for part of the cargo with the privity of the buyer, when the true ones were sent with the bills of lading, it cannot affect the validity of the contract between the shipper and buyer. But where a contract grows out of, and is connected with an illegal or immoral act, or is in part only connected with the illegal consideration, and growing immediately out of it, though it be a new contract, it is equally tainted, and a court of justice will not lend its aid to enforce it. 11 *Wheaton*, 258.

The loss on the shipment and the incidental charges, form the subject of the present suit.

The evidence shows that the deceased was a partner in the house of the consignees in New-York, and from his presence and agency in relation to the business in the Havana, preparing the invoices, and his advising the consignees of the shipment, we think his representatives are precluded from making any objection as to the quantity of any of the articles composing it.

It is objected by the counsel for the defendants, that the plaintiffs ordered Russell to sell the shipment on *their account*. This is a matter exclusively between the plaintiffs and their agent. They were not bound to part with the property, after the failure of the consignees, unless the bills were provided for, and the only interest the plaintiffs had in the shipment, was that it should be fairly sold according to the custom of merchants, and on this ground, no objection has been made to the mode in which Mr. Russell closed the transaction.

It appears that the plaintiffs had forwarded to the consignees, a false invoice for a portion of the sweetmeats which formed part of the shipment, which were to be used or not, as they should think proper. The genuine invoices were sent with the bills of lading, and there is nothing in this naked fact to which the deceased was not privy, and which was entirely without consequence, which can affect the validity of the contract originally made between the parties.

The principles on which contracts are affected by an illegal or immoral object, do not touch this case. See *Toler* vs. *Armstrong*, 11 *Wheaton*, 258.

We can find nothing in the conduct of the plaintiffs throughout the transaction, which would exonerate the estate of the deceased from his obligation to make good this loss. The shipment was made on his credit; the plaintiffs looked to him as the responsible person, and all their acts appear to have been dictated by a regard to his interests.

It is, therefore, ordered, adjudged and decreed, that the judgment of the Court of Probates be affirmed, with costs.